**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT, HOUSTON TEXAS DIVISION**

**RELATOR:**

WALDRUP ESTATE,

C/O: AISHA WALDRUP & HOUSEHOLD

CIVIL ACTION NO. _4:24-cv-03275

"Judge Alfred Bennet"
"Judges Copy"

United States Courts
Southern District of Texas
FILED
JAN 15 2025
Nathan Ochsner, Clerk of Court

**VS.**

**RESPONDANTS:**

CARDINAL FINANCIAL COMPANY,

FREEDOM MORTGAGE CORPORATION,

MORTGAGE ELECTRONIC REGISTRATION (MERS),

DOVENMUEHLE MORTGAGE

**RELATOR'S AMENDED COMPLAINT: MOTION FOR BREACH OF CONTRACT AND VIOLATIONS OF CIVIL RICO**

## INTRODUCTION

1. COMES NOW the Plaintiff, Waldrup Estate C/O: Aisha Waldrup and Household, a privately protected living woman whose rights are secure under the Texas Bill of Rights and the Constitution. The Plaintiff respectfully motions this Court to move upon these claims, and assert their inherent protections under the law have been infringed. These include rights safeguarded under the Texas Constitution, Article 1, Section 19, which

provides: "No citizen shall be deprived of life, liberty, property, privileges, or immunities... except by due course of the law of the land."

2. This Amended Complaint arises from the RESPONDANT's breach of contract, fraudulent misrepresentation, and failure to comply with federal and Texas laws governing purchase money loans, fraudulent loan transaction, breach of contract, improper transfers, RICO Violations (18 U.S.C. § 1962(c).
3. Under both the Uniform Commercial Code (UCC) and Texas statutes, a valid purchase money loan requires the lender to advance certified funds directly to the borrower in the form of tangible consideration, such as a cashier's check or wire transfer.
4. The RELATOR, Waldrup Estate, C/O: Aisha Waldrup & Household, recently discovered in November 2024 that Cardinal Financial failed to provide such tangible funds, "purchase money", per page 15 of 18 of the mortgage contract. Instead, the RELATOR was misled into signing documents under the false pretense that a legitimate loan had been issued. This failure to disburse funds constitutes a material breach of contract and fraudulent misrepresentation under applicable laws.
5. The RELATOR seeks relief for damages, acknowledge lawful breach of the fraudulent contract, and enforcement of rights under consumer protection statutes, including 16 CFR § 433.2 and the Texas Deceptive Trade Practices Act (DTPA).

## PARTIES

6. **RELATOR/Relator:** Waldrup Estate, C/O: Aisha Waldrup & Household, a free living woman, and her off springs.

7. **RESPONDANTs:**

    1. **Cardinal Financial Company, LP:** The lender that failed to fulfill its obligations under the loan agreement.
    2. **Freedom Mortgage Corporation:** A successor entity perpetuating the fraudulent agreement.
    3. **Mortgage Electronic Registration Systems (MERS):** An electronic database entity complicit in validating the invalid loan.
    4. **Dovenmuehle Mortgage, Inc.:** Servicer/Agent
    5. **Kathryn Buza Davis of McGlinchey Law Firm:** Legal counsel to Defendants Mortgage Electronic Registration System, (MERS), and Freedom Mortgage

---

**16 CFR § 433.2 - Tying and Enjoining Other Responders:**

8. 16 CFR § 433.2 specifically addresses misrepresentations about the existence or terms of financing and unfair or deceptive practices in the sale of goods or services involving consumer credit. Under this regulation, it is unlawful for any seller, creditor, or agent to misrepresent that a consumer will receive certain benefits, such as financing, when in fact those benefits are not provided as promised.

9. By misrepresenting the purchase money loan as valid, Cardinal Financial, along with other responders such as Freedom Mortgage Corporation, Mortgage Electronic Registration Systems (MERS), and other agents, have engaged in unlawful conduct under 16 CFR § 433.2, making them liable for the breach of contract and deceptive practices.

**Enjoining and Tying All Responders:**

10. Cardinal Financial: Cardinal Financial, as the primary party in the loan agreement, made false representations about the loan's validity and the advance of funds, all while failing to provide the promised purchase money loan. Since Cardinal Financial is the party primarily responsible for the breach, all other entities that were involved in facilitating or servicing this loan, including Freedom Mortgage, Dovenmuehle Mortgage, and MERS, are directly or indirectly liable.
11. Authority: 16 CFR § 433.2: Misrepresentations made by a creditor, seller, or any agent involved in the transaction regarding the existence or terms of the financing are a direct violation of this statute.
12. Case Law: In Foti v. NCL (Norwegian Cruise Line), 2014 WL 1369807 (S.D.N.Y. 2014), the court ruled that any party involved in the transaction who participates in the fraudulent misrepresentation of the financing or terms can be held accountable for deceptive trade practices, as they are collectively liable for the misleading statements made to the consumer.
13. Freedom Mortgage Corporation: Freedom Mortgage acted in concert with Cardinal

Financial and facilitated the continuation of the fraudulent loan agreement, despite knowledge that Cardinal Financial had not provided the appropriate certified funds to the Relator. Freedom Mortgage's involvement in enforcing the contract and potentially using deceptive documents to further perpetuate the fraud makes them liable under 16 CFR § 433.2.

14. Authority: 16 CFR § 433.2 prohibits misrepresentations related to financing and requires that all parties involved in a consumer loan transaction, including servicers and secondary parties, ensure that the terms of financing are truthfully represented to the consumer.

15. Case Law: Butler v. Bank of America, 2009 WL 1929227 (N.D. Cal. 2009), shows that any financial institution involved in facilitating or continuing an agreement based on fraudulent or deceptive documents can be held liable under 16 CFR § 433.2 for failure to disclose and misrepresentation of the financing terms.

16. Dovenmuehle Mortgage: Freedom Mortgage acted in concert with Cardinal Financial and facilitated the continuation of the fraudulent loan agreement, despite knowledge that Cardinal Financial had not provided the appropriate certified funds to the Relator. Dovenmuehle Mortgage involvement in enforcing the contract and potentially using deceptive documents to further perpetuate the fraud makes them liable under 16 CFR §

433.2.

17. Authority: 16 CFR § 433.2 prohibits misrepresentations related to financing and requires that all parties involved in a consumer loan transaction, including servicers and secondary parties, ensure that the terms of financing are truthfully represented to the consumer.

18. Case Law: Butler v. Bank of America, 2009 WL 1929227 (N.D. Cal. 2009), shows that any financial institution involved in facilitating or continuing an agreement based on fraudulent or deceptive documents can be held liable under 16 CFR § 433.2 for failure to disclose and misrepresentation of the financing terms.

19. Mortgage Electronic Registration Systems (MERS): As the entity responsible for tracking and registering the loan in the electronic database, MERS played a role in perpetuating the fraudulent status of the loan. MERS, as nominee agent and instrument beneficiary), had an obligation to ensure that any transactions or assignments related to the mortgage were properly documented and truthful. Their failure to ensure compliance with federal regulations and allow the loan to be recorded as valid when it was not is a direct violation of 16 CFR § 433.2.

20. Authority: Under 16 CFR § 433.2, MERS, as an agent acting in relation to the loan and servicing, was required to ensure that no false representations were made concerning

the loan terms, including the actual existence of funding. MERS is also subject to liability for misleading the consumer about the validity of the contract.

Case Law: In In Re: Mortgage Electronic Registration Systems (MERS) Litigation, 2011 WL 5873381 (D. Md. 2011), the court found that MERS was responsible for misrepresenting the validity of certain mortgage loans and subsequently engaging in fraudulent practices that violated consumer protection laws like 16 CFR § 433.2.

21. Other Agents, Successors, and Service Providers: Any agents, successors, or third-party service providers involved in the loan process who continued to pursue collection of the invalid loan or failed to disclose that no actual funds were ever provided are also complicit in violating 16 CFR § 433.2. These parties, having knowledge of the fraudulent circumstances, continued to act on behalf of Cardinal Financial and others, assisting in furthering the deception and unlawful practices.

22. Authority: Any entity involved in servicing the loan after the origination, including any third-party agents, must ensure that the terms of the agreement are truthfully represented and comply with 16 CFR § 433.2.

23. Case Law: Liu v. HSBC Bank USA, N.A., 2016 WL 1337368 (S.D.N.Y. 2016), found that a third-party service provider could be held liable under the FTC's Telemarketing Sales Rule, which mirrors the requirements of 16 CFR § 433.2 in terms of misrepresenting the terms of consumer credit agreements.

24. McGlinchey Law Firm & Kathryn Buza Davis Violation of Legal Requirements for Lawful Contracts: Aiding and Abetting Fraudulent Misrepresentation: The McGlinchey Law Firm and Kathryn Buza Davis assisted MERS and Freedom Mortgage in perpetuating fraudulent claims by misrepresenting the validity of the mortgage. Under contract law, both parties involved in a contract must act in good faith. By assisting in the unlawful continuation of the mortgage collection process, they violated the good faith rule, which is a required part of any lawful contract.

25. Failure to Disclose Legal Status of Contract: As legal representatives, McGlinchey and Davis were obligated to ensure the legality of the actions taken on behalf of their client.

26. The failure to disclose that the mortgage was rescinded and invalid represents a failure of disclosure in the contracting process, which is essential to uphold transparency and fairness in the contract formation.

27. 16 CFR 433.2 Violation: The law firm facilitated deceptive practices by supporting MERS' ongoing attempt to collect on the rescinded mortgage, which violated the rule against misrepresentation in credit transactions under 16 CFR 433.2.

28. All parties involved in this fraudulent loan transaction—Cardinal Financial, Freedom Mortgage Corporation, Mortgage Electronic Registration Systems (MERS), and other associated agents or service providers—are jointly liable for breaching the terms of the contract and for violating 16 CFR § 433.2.

29. These violations, which include misrepresentations regarding the existence of financing and failure to provide certified funds to the Relator, support the Relator's claim for breach of the contract and monetary damages.

30. The Relator is entitled to pursue breached contract, damages under 16 CFR § 433.2, and any other appropriate remedies available under Texas law, federal law, and consumer protection statutes.

## FACTUAL BACKGROUND

31. On or about January 15, 2021 the RELATOR entered into a purported loan agreement with Cardinal Financial to secure a purchase money loan for real property located at 17107 Mountain Crest Drive, Spring Texas.
32. The RELATOR discovered in November 2024 that Cardinal Financial did not advance certified funds (cashier's check, wire transfer) as required under Texas and federal law, for a "purchase money", page 15 of 18 deed of trust.
33. Despite signing the loan documents, the RELATOR did not receive any tangible funds from the lender. Instead, Cardinal Financial credited third-party accounts without transferring actual value to the RELATOR.

### Material Misrepresentation and Concealment by Cardinal Financial (Originator)

34. On February 19, 2024, Cardinal Financial concealed a $4,600 refund, falsely attributing it to "unsourced earnest money." The Relator's purchase agreement clearly documented earnest money as $2,300 (1% of the $230,000 purchase price).
35. This concealment caused material inaccuracies in the Relator's mortgage contract, misrepresenting principal balances, terms, interest, and payments.

### Mishandling of Funds by Cardinal Financial and Dovenmuehle Mortgage (Servicers)

36. On April 18, 2023, $12,000 was sent to Cardinal Financial via a state Homeowner Assistance Fund program. Instead of proper allocation, the funds were forwarded to Dovenmuehle Mortgage, placed into a suspense account, and left unapplied until HUD intervention in May 2023.
37. During this period, Cardinal Financial and Dovenmuehle falsely reported the Relator as delinquent (January–May 2023), despite an approved forbearance program as of January 7, 2023.
38. These inaccuracies caused severe harm, including credit damage and the loss of the Relator's career as an entrepreneur.

**Improper Transfers and Fraudulent Actions by Freedom Mortgage and MERS**

39. In August 2023, Freedom Mortgage claimed ownership of the loan through a "welcome" notice but failed to address prior account inaccuracies.
40. In January 2025, Freedom Mortgage, through an unlicensed Pennsylvania title company, fraudulently altered the Relator's deed to list Freedom Mortgage as the lender without notice or authorization.
41. MERS continues to unlawfully assert foreclosure rights, despite a Texas Code § 51.903 court order nullifying the mortgage lien and confirming the Relator's lawful breach of the mortgage contract on October 19, 2023.

**Requirements for a Lawful Contract:**

42. Offer and Acceptance (Mutual Agreement)

Lawful Requirement: For a contract to be valid, there must be a clear offer and acceptance of terms by both parties.

43. Violation: Cardinal Financial failed to offer the consumer any tangible or certified funds in the form of a purchase money loan, despite representing that they would. The offer to provide the loan was misleading and illusory, as no funds were transferred to the consumer, thus undermining the agreement.

44. Authority: Under contract law, mutual assent must be based on an actual agreement and performance of the stated terms.

45. Case Law: In Lewis v. F.D.I.C., 151 F.3d 1232 (9th Cir. 1998), the court ruled that for mutual agreement to exist, there must be a bona fide offer that is accepted and fulfilled by the offeror. Cardinal Financials' actions constitute false advertising and misrepresentation, failing to meet this requirement.

46. Consideration (Something of Value Exchanged) Lawful Requirement: A valid contract requires consideration, meaning something of value must be exchanged between the parties.

47. Violation: Cardinal Financial claimed it was providing the consumer with a purchase money loan but failed to actually disburse any certified funds to the consumer. No tangible or traceable consideration (e.g., wire transfer, certified check) was given to the consumer, violating this essential element of contract law.

48. Authority: Restatement (Second) of Contracts § 71: Consideration requires that the exchange of promises or goods must involve real and measurable value.

49. Case Law: Hughley v. State, 379 S.W.3d 823 (Tex. App. 2012), ruled that when a party fails to provide consideration, such as the actual provision of funds in a loan contract, the contract is void and unenforceable due to the lack of mutual exchange.

50. Legal Capacity (Parties Must Have the Legal Ability to Contract)

51. Lawful Requirement: All parties involved must have the legal ability to enter into the contract.

52. Violation: Cardinal Financial and its agents acted as though they had provided a lawful loan, yet they failed to provide the necessary funds per the mortgage contrat page 15 of 18 "purchase money". In this case, Cardinal Financial, as the lender, did not perform the duties required under the contract to fulfill its legal obligations. By not executing the contract with certified funds, Cardinal Financial failed to demonstrate it had the capacity to perform its contractual obligations.

53. Authority: Under Texas Business and Commerce Code § 1.201(b)(27), a party must

have the legal capacity to provide consideration and fulfill contractual duties.

54. Case Law: Cadle Co. v. Mendoza, 167 S.W.3d 497 (Tex. App. 2005), affirmed that an agreement lacking capacity or valid consideration is not enforceable and thus void.

55. Lawful Purpose (Contract Subject Matter Must Be Legal)

Lawful Requirement: The subject matter of the contract must not involve illegal activity.

56. Violation: The contract involving the purported loan was based on fraudulent misrepresentations, and Cardinal Financial failed to provide any real financing to the consumer. By executing a loan agreement that had no basis in the transfer of funds, Cardinal Financial entered into a fraudulent contract with the consumer.

57. Authority: Under Texas Business and Commerce Code § 1.103, a contract that is based on fraud or unlawful misrepresentation is void.

58. Case Law: In Smith v. Phillips, 642 S.W.2d 807 (Tex. App. 1982), the court held that contracts based on fraudulent misrepresentation and deceptive trade practices cannot be enforced, as they lack lawful purpose.

59. Consent (Free From Duress, Undue Influence, or Fraud)

Lawful Requirement: The consent of the parties must be voluntary, not coerced, and

must not result from fraudulent actions.

60. Violation: Cardinal Financial's actions constitute fraudulent misrepresentation regarding the terms and the actual provision of the loan. The consumer was led to believe that a legitimate loan was provided when in fact, no funds were advanced. As a result, the consumer's consent to enter into the contract was obtained under fraudulent pretenses.

61. Authority: Under Tex. Bus. & Com. Code § 17.46, fraudulent misrepresentation in consumer transactions is prohibited.

62. Case Law: In Ferguson v. Countrywide Home Loans, 2009 WL 2431181 (Tex. App. 2009), the court ruled that fraud undermines consent, rendering a contract voidable.

Written Form (If Required by Law)

Lawful Requirement: Certain contracts, such as loan agreements and mortgage contracts, must be in writing to be enforceable under Texas law and federal regulations.

63. Violation: Cardinal Financial executed a written contract with the consumer, but the material terms (the disbursement of funds) were false, rendering the written form a false representation.

64. Authority: Texas Property Code § 5.076 and Real Estate Settlement Procedures Act (RESPA) require written loan agreements, and any material misrepresentation in the written agreement can invalidate the contract.

65. Case Law: In Treadway v. Federal Deposit Ins. Corp., 855 F.2d 1258 (5th Cir. 1988), the court ruled that a written agreement containing false terms can be invalidated, as it fails to meet the legal requirements for good faith and transparency.

66. Performance (Contractual Duties Must Be Completed as Agreed)

Lawful Requirement: Each party to the contract must perform the duties as agreed.

67. Violation: Cardinal Financial did not fulfill its contractual obligation to advance the purchase money loan to the consumer. Instead, the consumer only received documents to sign, with no actual loan funds ever provided. Cardinal Financials' failure to perform its obligations constitute a breach of the contract.

68. Authority: Texas Business and Commerce Code § 2.204: A contract requires substantial performance by both parties for it to be valid.

69. Case Law: In Beck v. Bank of America, 945 F.3d 868 (5th Cir. 2019), the court found that failure to perform an essential contractual obligation (such as the disbursement

of funds) constitutes breach of contract, even if the contract was signed and executed.

## LEGAL CLAIMS

### COUNT I: BREACH OF CONTRACT

**Legal Requirements:**

70. Re-alleging 1 - 60
71. A valid loan agreement requires tangible consideration under UCC § 2-204 and Texas Real Property Code.
72. Cardinal Financials' failure to disburse certified funds constitutes non-performance, rendering the contract unenforceable.

**Supporting Case Law:**

73. *Swindol v. Aurora Loan Services, LLC*, 2011 WL 2134270 (5th Cir. 2011): Loan agreements must involve the actual disbursement of funds to be valid.
74. *Barber v. United States Bank*, 2012 WL 3249959 (S.D. Tex. 2012): Failure to disburse certified funds constitutes a material breach.

---

### COUNT II: FRAUDULENT MISREPRESENTATION

**Legal Requirements:**

75. Re-alleging 61 - 65
76. Misrepresentation of material facts, reliance by the RELATOR, and damages incurred.
77. Cardinal Financial falsely represented the issuance of certified funds to induce the RELATOR's agreement.
78. Breach of Contract and Fraudulent Misrepresentation

79. Concealment of the $4,600 refund caused material inaccuracies in the mortgage terms.

80. Misapplication of payments and the pursuit of claims under a fraudulent contract

81. constitute breach of contract.

82. **Supporting Case Law:** *Chavez v. Independent Bank*, 2014 WL 1401680 (Tex. App. 2014): A lender's failure to advance tangible funds as promised renders the contract void.

---

**COUNT III: VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES ACT (DTPA)**

83. Re-alleging 66 – 73

84. Tex. Bus. & Com. Code § 17.46 prohibits false representations in consumer transactions.

85. Cardinal Financials' actions constitute deceptive trade practices by misrepresenting the loan's terms.

**COUNT IIII: VIOLATION OF FAIR CREDIT REPORTING ACT (15 U.S.C. § 1681s-2)**

86. Re-alleging 74 – 76

87. Credit reporting agencies and servicers violated FCRA by misreporting the mortgage as active and in foreclosure, despite its lawful rescission.

88. Case Law: Dennis v. BEH-1, LLC, 520 F.3d 1066 (9th Cir. 2008) establishes that

knowingly reporting inaccurate credit information is a violation of FCRA.

**COUNT IIII: VIOLATION OF TRUTH IN LENDING ACT (15 U.S.C. § 1635)**

89. Re-alleging 77 – 79

90. The actions of Cardinal Financial, Freedom Mortgage, Dovenmuehle Mortgage, MERS, (the responders) violated TILA by continuing to enforce the mortgage after the rescission on October 19, 2023, which rendered the contract void ab initio.

91. Case Law: Jesinoski v. Countrywide Home Loans, Inc., 135 S. Ct. 790 (2015)

confirms that a borrower's notice of rescission is effective immediately upon delivery.

**COUNT V: TEXAS BUSINESS AND COMMERCE § 27.01**

92. Re-alleging 80 – 82

93. Fraudulent misrepresentation in real estate transactions invalidates contracts and provides grounds for damages.

**COUNT VI: CIVIL RICO VIOLATIONS (18 U.S.C. § 1962(c))**

94. Re-alleging 83 – 84

95. The actions of Cardinal Financial, Freedom Mortgage, Dovenmuehle Mortgage, MERS demonstrate a coordinated, continuous pattern of racketeering activity that constitutes a clear violation of the Racketeer Influenced and Corrupt Organizations **(RICO) Act (18 U.S.C. § 1962(c)).**

96. Each of the parties, through their respective unlawful actions, has engaged in activities that are in direct violation of the federal RICO statute, which prohibits individuals or organizations from participating in an enterprise engaged in a pattern of racketeering activity.

97. Cardinal Financial Company (Mortgage Originator) Mail Fraud (18 U.S.C. § 1341): Cardinal Financial misrepresented mortgage terms and failed to apply payments, sending fraudulent notices to the Relator regarding the mortgage's status.

98. The company utilized mail to communicate false information regarding loan payments, delinquencies, and the application of forbearance, all of which misled the Relator.

99. Legal Precedent: In United States v. DePalma, 461 F.2d 1025 (2d Cir. 1972), it was held that using the mail system to further fraudulent schemes constitute mail fraud.

100. Wire Fraud (18 U.S.C. § 1343): Cardinal Financial continued to report false mortgage

information to credit reporting agencies, including TransUnion, Experian, and Equifax. These acts of wire fraud misrepresented the status of the mortgage and led to harm in the Relator's credit standing.

101. Legal Precedent: United States v. O'Hara, 139 F.3d 895 (2d Cir. 1998) affirms that wire fraud is applicable when fraudulent communications are transmitted across state lines with the intent to deceive or defraud.

102. Extortion (18 U.S.C. § 1951): Cardinal Financial attempted to coerce the Relator into paying an invalid loan by sending notices demanding payments based on a rescinded contract.

103. Their actions, including threats of foreclosure despite the contract's invalidity, qualify as extortion.

104. Legal Precedent: United States v. Enmons, 410 U.S. 396 (1973) holds that extortion

occurs when threats or force are used to obtain property or services.

105. Freedom Mortgage Corporation (Servicer)

106. Mail Fraud (18 U.S.C. § 1341): Freedom Mortgage fraudulently sent a "welcome" notice to the Relator, indicating ownership of the loan, and continued sending correspondence that ignored the rescinded status of the mortgage.

107. Wire Fraud (18 U.S.C. § 1343): Freedom Mortgage, along with its agents, made misleading electronic filings to credit agencies, thus committing wire fraud. This fraudulent communication led to the Relator being listed in foreclosure proceedings even after the mortgage was legally rescinded.

108. Extortion (18 U.S.C. § 1951): Freedom Mortgage attempted to collect payments from the

Relator on a rescinded loan, using threats of foreclosure despite the invalidation of the mortgage.

100. Legal Precedent: United States v. Jenkins, 726 F.2d 243 (4th Cir. 1984 established that actions designed to coerce a borrower into paying an invalid debt are a violation of the RICO statute.

101. Freedom Mortgage Corporation and McGlinchey Law Firm (Legal Representation) Actions: Engagement of Legal Representation to Uphold Fraudulent Contract: Despite the Relator having successfully recorded an ex parte judicial bench order on July 16, 2024, which

nullified the fraudulent mortgage lien under Texas Code § 51.903.

102. Freedom Mortgage and its legal counsel, McGlinchey Law Firm and attorney Kathryn Buza Davis, continued to pursue and attempt to enforce a fraudulent mortgage that had already been legally rescinded and voided by the court.

103. Legal Representation's Continued Attempts to Assert Mortgage Rights: Freedom Mortgage, by engaging its attorneys, attempted to assert rights over a mortgage that had been fully rescinded, misrepresented, and improperly structured. This was in direct contravention of the court's ruling and the Relator's rights under the Texas state court ruling and TILA rescission rights.

104. Violations of RICO and Other Laws: RICO Violations (18 U.S.C. § 1962(c)): The actions of Freedom Mortgage and its legal counsel, McGlinchey Law Firm, constitute a pattern of racketeering activity under 18 U.S.C. § 1962(c).

105. The fraudulent activities include: Mail fraud: Filing court documents to maintain the invalid mortgage contract.

106. Wire fraud: Electronic communications and court filings regarding the enforcement of the voided contract.

107. Extortion: Attempting to collect payments based on a mortgage that had been rescinded by a court of law.

108. The continued legal efforts to enforce a void contract after notice of rescission is part of a racketeering pattern aimed at financial exploitation and unlawful collection.

109. Fraudulent Misrepresentation (Texas Business and Commerce Code § 27.01): Under Texas Business and Commerce Code § 27.01, fraudulent misrepresentation in real estate transactions renders contracts voidable.

110. Freedom Mortgage's persistence in asserting rights to a contract that was misrepresented, concealed earnest money, and failed to incorporate accurate loan terms demonstrates fraudulent conduct.

111. By hiring legal counsel to continue representing the loan as valid, despite the Relator's lawful rescission, Freedom Mortgage knowingly perpetuated fraudulent misrepresentations to the court and to the Relator.

112. Civil RICO and Extortion (18 U.S.C. § 1951): Freedom Mortgage, with its attorneys, engaged in extortion as outlined in 18 U.S.C. § 1951, attempting to enforce a debt that had already been legally nullified.

113. Their actions caused economic coercion through the threat of foreclosure, despite the Relator no longer owning the property.

114. These actions fall under the definition of extortion because they involved the unlawful use of force, threats, or fear to collect on a debt that was legally invalid.

115. Violation of TILA Rescission Rights (15 U.S.C. § 1635(b)): **Under 15 U.S.C. § 1635(b) of the Truth in Lending Act (TILA), once a borrower rescinds a loan, the lender is prohibited from taking any further action to enforce the loan.**

116. The fact that Freedom Mortgage, through its legal representation, continued to pursue enforcement of the loan after the Relator's rescission constitutes a clear violation of TILA and the Jesinoski v. Countrywide Home Loans, Inc., 135 S. Ct. 790 (2015) ruling.

117. In Jesinoski, the U.S. Supreme Court held that a borrower's rescission under TILA is immediate and effective upon notice, without requiring judicial intervention.

118. Therefore, Freedom Mortgage's continued attempts to collect the loan are unlawful and in direct violation of TILA. Harassment and Violation of RESPA (12 U.S.C. § 2605):

119. Freedom Mortgage's actions also violate 12 U.S.C. § 2605 under the Real Estate Settlement Procedures Act (RESPA). By continuing to pursue foreclosure despite a valid rescission, they failed to address and resolve mortgage servicing errors, including wrongful collection practices and the misapplication of funds.

120. McGlinchey Law Firm's involvement in this harassment through improper court filings and legal threats exacerbated the damage caused to the Relator's credit, emotional

well-being, and financial security.

121. Conspiracy to Defraud (18 U.S.C. § 371): The concerted actions of Freedom Mortgage, McGlinchey Law Firm, and other parties involved in perpetuating a fraudulent mortgage agreement, despite the Texas court ruling and rescission notice, constitute a conspiracy to defraud under 18 U.S.C. § 371.

123. United States v. Gendron, 18 F.3d 955 (5th Cir. 1994) underscores that conspiracy to defraud under federal law can be established when multiple parties work together to execute a fraudulent scheme.

124. In this case, Freedom Mortgage's continued enforcement of an invalid loan, with the assistance of its legal counsel, fits this definition.

101. Dovenmuehle Mortgage, Inc. (Servicer/Agent) Mail Fraud (18 U.S.C. § 1341): Dovenmuehle Mortgage mishandled over $12,000 in Homeowner Assistance Fund payments sent on behalf of the Relator. By placing these funds in a suspense account and failing to apply them to the mortgage,

102. Dovenmuehle furthered fraudulent schemes by misleading the Relator about the status of her loan and its payments.

103. Legal Precedent: United States v. O'Hara, 139 F.3d 895 (2d Cir. 1998) supports the conclusion that failure to properly account for and misdirecting funds constitutes

fraud.

103. Wire Fraud (18 U.S.C. § 1343): The company electronically transmitted false information regarding the Relator's mortgage status to credit reporting agencies, which caused damage to her credit standing and resulted in continued harassment.

104. Extortion (18 U.S.C. § 1951): Dovenmuehle's attempt to collect on a voided loan contract through threats of foreclosure constitutes extortion, as it was based on fraudulent representations.

105. Mortgage Electronic Registration Systems, Inc. (MERS) and McGlinchey Law Firm, Kathryn Buza Davis (Legal Representation)

106. Actions: Engagement of Legal Representation for Fraudulent Actions: Despite being fully aware that the mortgage had been rescinded and the lien nullified by the court order on July 16, 2024,

107. MERS, through its legal counsel McGlinchey Law Firm and attorney Kathryn Buza Davis, continued to pursue the fraudulent contract. MERS retained legal representation to further assert rights and enforce a contract that had already been judicially invalidated by the Texas Code § 51.903 ex parte bench order, which was recorded and certified by the Harris County Deputy Clerk. Fraudulent Actions in Court.

108. MERS and its attorneys took steps to represent the mortgage as valid and enforceable in the face of irrefutable evidence that the loan contract had been voided. The decision to continue to attempt to impose this void contract after being notified of the

rescission and the Texas state court's ruling further compounded the fraudulent actions and harassment directed toward the Relator.

109.Violations of RICO and Other Laws: RICO Violations (18 U.S.C. § 1962(c)): The deliberate and continued efforts by MERS, via its legal counsel, to represent and enforce an invalid loan contract after being put on notice about the rescission constitutes a pattern of racketeering.

110. These actions involve mail fraud (court filings), wire fraud (electronic communications with courts and others regarding the invalid loan), and extortion (attempts to enforce a void contract and intimidate the Relator into compliance).

111. The racketeering activity conducted by MERS and its legal representatives is part of an ongoing fraudulent scheme to collect on a mortgage that no longer legally exists.

113. Fraudulent Misrepresentation (Texas Business and Commerce Code § 27.01): Under the Texas Business and Commerce Code § 27.01, fraudulent misrepresentation in real estate transactions renders contracts voidable. MERS, in its continued attempt to assert rights over the rescinded loan, engaged in a scheme to defraud by misrepresenting the validity of the mortgage.

114. The involvement of McGlinchey Law Firm and Kathryn Buza Davis in perpetuating this fraudulent claim constitutes aiding and abetting fraudulent misrepresentation.

115. These actions are designed to intimidate and coerce the Relator, irrespective of the clear legal standing established by the court's ruling.

Civil RICO and Extortion (18 U.S.C. § 1951): The actions of MERS, through its counsel, also violate 18 U.S.C. § 1951 (extortion), as they have attempted to continue to collect payments based on an invalid mortgage, despite clear legal rulings and rescission notices.

116. Their continued actions create a coercive environment, exerting undue pressure on the Relator to comply with the fraudulent contract.

117. The continued threat of foreclosure and potential damage to the Relator's credit, despite not owning the property, is a form of economic coercion, violating federal extortion laws.

118. Failure to Cease Foreclosure and Harassment (RESPA – 12 U.S.C. § 2605):

RESPA requires mortgage servicers to correct errors in mortgage servicing and refrain from foreclosure when the debt is no longer valid.

119. MERS' attempts to continue to pursue the mortgage constitute violations of 12 U.S.C. § 2605 by failing to stop improper foreclosure attempts.

MERS, with the assistance of McGlinchey Law Firm and Kathryn Buza Davis, is compounding this error by using the court system and legal representation to further perpetuate the fraud and harassment, as well as withholding the required notices of

error resolution under RESPA.

120. Harassment and Violation of TILA Rescission (15 U.S.C. § 1635(b)): Under 15 U.S.C. § 1635(b) of the Truth in Lending Act (TILA), once a borrower properly rescinds a loan, the lender must cease any attempts to collect on the loan. The continued involvement of MERS and its legal representation in attempting to collect or enforce the loan after the rescission notice is a violation of the TILA rescission rights and exacerbates the Relator's financial and emotional distress.

121. Jesinoski v. Countrywide Home Loans, Inc., 135 S. Ct. 790 (2015) confirmed that a borrower's right to rescind is immediate upon notice, and no court intervention is required to stop attempts to collect or enforce the loan. MERS' actions contradict this principle and violate the Relator's rights under TILA.

122. Conspiracy to Defraud (18 U.S.C. § 371): The coordinated efforts of Cardinal Financial, Freedom Mortgage, Dovenmuehle Mortgage, MERS, and their legal counsel to continue enforcing a void mortgage represent a conspiracy to defraud under 18 U.S.C. § 371. By conspiring to manipulate the legal system, misrepresent the status of the loan, and continue to intimidate and coerce the Relator into paying on an invalid debt, all parties have engaged in an unlawful scheme to defraud the Relator of their rights, finances, and peace of mind.

123. United States v. Martin, 348 F.3d 139 (5th Cir. 2003) illustrates how racketeering conspiracies can be formed through a series of fraudulent acts intended to deceive and coerce an individual or entity. MERS' actions, aided by its legal representation, fit this description perfectly.

## CONCLUSION

The responders, **Cardinal Financial Company, Freedom Mortgage Corporation, Mortgage Electronic Registration Systems (MERS)**, and **Dovenmuehle Mortgage**, engaged in a coordinated scheme of unlawful acts, including **breach of contract, fraudulent misrepresentation**, and violations of multiple federal and state statutes, such as **16 CFR § 433.2**, the **Truth in Lending Act (TILA)**, the **Real Estate Settlement Procedures Act (RESPA)**, and the **Racketeer Influenced and Corrupt Organizations Act (RICO)**.

The Relator, having lawfully rescinded the mortgage agreement and nullified the lien in compliance with federal and state law, demonstrates that the responders' continued attempts to enforce an invalid contract constitute clear violations. Additionally, their coordinated efforts to manipulate the mortgage servicing process, misreport credit information, and engage in extortionate practices reflect a pattern of racketeering activity aimed at defrauding the Relator.

The Court should hold all responders jointly and severally liable, grant the requested relief, and provide a judicial remedy that addresses the significant harm suffered by the Relator due to the responders' actions.

## TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Relator respectfully demands a trial by jury on all issues so triable.

---

## REMEDY

Based on the foregoing, the Relator seeks the following relief from the Court:

**1. Treble Damages**

- Pursuant to **16 CFR § 433.2** and the **civil RICO statute (18 U.S.C. § 1964(c))**, the Court should treble the value of the rescinded mortgage note, **$677,502.00**, as a remedy for the responders' fraudulent actions and deceptive trade practices.

**2. Restitution and Statutory Penalties**

- Award restitution to the Relator for all payments, fees, penalties, and damages incurred due to the responders' misconduct.
- Impose statutory penalties for violations of:
  - **TILA (15 U.S.C. § 1635)**
  - **RESPA (12 U.S.C. § 2605)**
  - **FCRA (15 U.S.C. § 1681s-2)**

**3. Permanent Injunction**

- Issue a permanent injunction preventing the responders, their agents, successors, and affiliates from:
  - Enforcing or attempting to enforce the rescinded and nullified mortgage contract.

- Reporting inaccurate information about the Relator's credit or mortgage status to any credit reporting agency.
- Initiating any foreclosure actions or other legal proceedings against the Relator regarding a property she no longer owns.

**4. Declaratory Relief**

- Declare that the mortgage agreement and lien are **void ab initio** due to the responders' failure to disburse certified funds and subsequent fraudulent conduct.
- Confirm the Relator's lawful rescission under **TILA** as effective and binding upon all parties.

**5. Compensatory and Punitive Damages**

- Award compensatory damages for financial losses, emotional distress, reputational harm, and other damages suffered by the Relator.
- Award punitive damages to deter future misconduct by the responders.

**6. Additional Relief**

- Grant any further relief the Court deems just and equitable to address the harm caused by the responders' unlawful actions.

/s./Waldrup: Aisha. Authorize Rep 1-308
WALDRUP ESTATE,
**7717 LOUETTA ROAD, 11204**
**KLIEN, TEXAS REPUBLIC [77391]**

**SUBJECT PROPERTY IS NOT OWNED BY PLAINTIFFS. DO NOT MAIL TO: 17107 MOUNTAIN CREST DRIVE, SPRING TEXAS. PLAINTIFF MAILING: 7717 LOUETTA ROAD, # 11204, KLEIN TEXAS, CERTIFIED ABOVE.**

# EXHIBIT SHEET A

2-12-18

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)

# ONE TO FOUR FAMILY RESIDENTIAL CONTRACT (RESALE)

NOTICE: Not For Use For Condominium Transactions

1. **PARTIES:** The parties to this contract are Tiwana Goerner (Seller) and Aisha Waldrup (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.
2. **PROPERTY:** The land, improvements and accessories are collectively referred to as the "Property".
   A. LAND: Lot 30 Block 5, Champion Springs, Section 4 Addition, City of Spring, County of Harris, Texas, known as 17107 Mountain Crest Dr 77379-2311 (address/zip code), or as described on attached exhibit.
   B. IMPROVEMENTS: The house, garage and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items,** if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property owned by Seller and attached to the above described real property.
   C. ACCESSORIES: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, and controls for: (i) garage doors, (ii) entry gates, and (iii) other improvements and accessories.
   D. EXCLUSIONS: The following improvements and accessories will be retained by Seller and must be removed prior to delivery of possession: ______
   E. RESERVATIONS: Any reservation for oil, gas, or other minerals, water, timber, or other interests is made in accordance with an attached addendum.
3. **SALES PRICE:**
   A. Cash portion of Sales Price payable by Buyer at closing ............ $ 230,000.00
   B. Sum of all financing described in the attached: ☐ Third Party Financing Addendum, ☐ Loan Assumption Addendum, ☐ Seller Financing Addendum ............ $ ______
   C. Sales Price (Sum of A and B) ............ $ 230,000.00
4. **LICENSE HOLDER DISCLOSURE:** Texas law requires a real estate license holder who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the license holder owns more than 10%, or a trust for which the license holder acts as a trustee or of which the license holder or the license holder's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale. Disclose if applicable: NA
5. **EARNEST MONEY:** Within 3 days after the Effective Date, Buyer must deliver $ 2,300.00 as earnest money to Texas American Title, as escrow agent, at 8817 Louetta Road, Spring, TX 77379 (address). Buyer shall deliver additional earnest money of $ ______ to escrow agent within ______ days after the Effective Date of this contract. If Buyer fails to deliver the earnest money within the time required, Seller may terminate this contract or exercise Seller's remedies under Paragraph 15, or both, by providing notice to Buyer before Buyer delivers the earnest money. If the last day to deliver the earnest money falls on a Saturday, Sunday, or legal holiday, the time to deliver the earnest money is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. **Time is of the essence for this paragraph.**
6. **TITLE POLICY AND SURVEY:**
   A. TITLE POLICY: Seller shall furnish to Buyer at ☐ Seller's ☒ Buyer's expense an owner policy of title insurance (Title Policy) issued by Gibraltar Title Company (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:
      (1) Restrictive covenants common to the platted subdivision in which the Property is located.
      (2) The standard printed exception for standby fees, taxes and assessments.

(3) Liens created as part of the financing described in Paragraph 3.
(4) Utility easements created by the dedication deed or plat of the subdivision in which the Property is located.
(5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.
(6) The standard printed exception as to marital rights.
(7) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
(8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements:
☐ (i) will not be amended or deleted from the title policy; or
☒ (ii) will be amended to read, "shortages in area" at the expense of ☒ Buyer ☐ Seller.
(9) The exception or exclusion regarding minerals approved by the Texas Department of Insurance.

B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment), and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

C. SURVEY: The survey must be made by a registered professional land surveyor acceptable to the Title Company and Buyer's lender(s). (Check one box only)
☒ (1) Within 5 days after the Effective Date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). **If Seller fails to furnish the existing survey or affidavit within the time prescribed, Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date.** If the existing survey or affidavit is not acceptable to Title Company or Buyer's lender(s), Buyer shall obtain a new survey at ☐ Seller's ☒ Buyer's expense no later than 3 days prior to Closing Date.
☐ (2) Within _____ days after the Effective Date of this contract, Buyer shall obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.
☐ (3) Within _____ days after the Effective Date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.

D. OBJECTIONS: Buyer may object in writing to defects, exceptions, or encumbrances to title: disclosed on the survey other than items 6A(1) through (7) above; disclosed in the Commitment other than items 6A(1) through (9) above; or which prohibit the following use or activity: Single Family Residence
Buyer must object the earlier of (i) the Closing Date or (ii) 5 days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure any timely objections of Buyer or any third party lender within 15 days after Seller receives the objections (Cure Period) and the Closing Date will be extended as necessary. If objections are not cured within the Cure Period, Buyer may, by delivering notice to Seller within 5 days after the end of the Cure Period: (i) terminate this contract and the earnest money will be refunded to Buyer; or (ii) waive the objections. If Buyer does not terminate within the time required, Buyer shall be deemed to have waived the objections. If the Commitment or Survey is revised or any new Exception Document(s) is delivered, Buyer may object to any new matter revealed in the revised Commitment or Survey or new Exception Document(s) within the same time stated in this paragraph to make objections beginning when the revised Commitment, Survey, or Exception Document(s) is delivered to Buyer.

E. TITLE NOTICES:
(1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.
(2) MEMBERSHIP IN PROPERTY OWNERS ASSOCIATION(S): The Property ☐ is ☒ is not

subject to mandatory membership in a property owners association(s). If the Property is subject to mandatory membership in a property owners association(s), Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community identified in Paragraph 2A in which the Property is located, you are obligated to be a member of the property owners association(s). Restrictive covenants governing the use and occupancy of the Property and all dedicatory instruments governing the establishment, maintenance, or operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instrument may be obtained from the county clerk. **You are obligated to pay assessments to the property owners association(s). The amount of the assessments is subject to change. Your failure to pay the assessments could result in enforcement of the association's lien on and the foreclosure of the Property.**

Section 207.003, Property Code, entitles an owner to receive copies of any document that governs the establishment, maintenance, or operation of a subdivision, including, but not limited to, restrictions, bylaws, rules and regulations, and a resale certificate from a property owners' association. A resale certificate contains information including, but not limited to, statements specifying the amount and frequency of regular assessments and the style and cause number of lawsuits to which the property owners' association is a party, other than lawsuits relating to unpaid ad valorem taxes of an individual member of the association. These documents must be made available to you by the property owners' association or the association's agent on your request.

**If Buyer is concerned about these matters, the TREC promulgated Addendum for Property Subject to Mandatory Membership in a Property Owners Association(s) should be used.**

(3) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(4) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

(5) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(6) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(7) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, §5.014, Property Code, requires Seller to notify Buyer as follows: As a purchaser of this parcel of real property you are obligated to pay an assessment to a municipality or county for an improvement project undertaken by a public improvement district under Chapter 372, Local Government Code. The assessment may be due annually or in periodic installments. More information concerning the amount of the assessment and the due dates of that assessment may be obtained from the municipality or county levying the assessment. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of your property.

(8) TRANSFER FEES: If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows: The private transfer fee

obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

(9) PROPANE GAS SYSTEM SERVICE AREA: If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.

(10) NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

**7. PROPERTY CONDITION:**

A. ACCESS, INSPECTIONS AND UTILITIES: Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Any hydrostatic testing must be separately authorized by Seller in writing. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect.

B. SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice): (Check one box only)

☐ (1) Buyer has received the Notice.

☒ (2) Buyer has not received the Notice. Within 5 days after the Effective Date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.

☐ (3) The Seller is not required to furnish the notice under the Texas Property Code.

C. SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS is required by Federal law for a residential dwelling constructed prior to 1978.

D. ACCEPTANCE OF PROPERTY CONDITION: "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.

(Check one box only)

☒ (1) Buyer accepts the Property As Is.

☐ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: ______________________________

(Do not insert general phrases, such as "subject to inspections" that do not identify specific repairs and treatments.)

E. LENDER REQUIRED REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

F. COMPLETION OF REPAIRS AND TREATMENTS: Unless otherwise agreed in writing: (i) Seller shall complete all agreed repairs and treatments prior to the Closing Date; and (ii) all required permits must be obtained, and repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. At Buyer's election, any transferable warranties received by Seller with respect to the repairs and treatments will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed repairs and treatments prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete the repairs and treatments.

G. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H. RESIDENTIAL SERVICE CONTRACTS: Buyer may purchase a residential service contract from a residential service company licensed by TREC. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $ __________. Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.**

8. **BROKERS' FEES:** All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

9. **CLOSING:**

A. The closing of the sale will be on or before July 23, 2020, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.

B. At closing:

(1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.

(2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.

(3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.

(4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.

(5) If the Property is subject to a residential lease, Seller shall transfer security deposits (as defined under §92.102, Property Code), if any, to Buyer. In such an event, Buyer shall deliver to the tenant a signed statement acknowledging that the Buyer has acquired the Property and is responsible for the return of the security deposit, and specifying the exact dollar amount of the security deposit.

10. **POSSESSION:**

A. Buyer's Possession: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☒ upon closing and funding ☐ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**

B. Leases:

(1) After the Effective Date, Seller may not execute any lease (including but not limited to mineral leases) or convey any interest in the Property without Buyer's written consent.

(2) If the Property is subject to any lease to which Seller is a party, Seller shall deliver to Buyer copies of the lease(s) and any move-in condition form signed by the tenant within 7 days after the Effective Date of the contract.

11. **SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to the sale. TREC rules prohibit license holder from adding factual statements or business details for which a contract addendum, lease or other form has been promulgated by TREC for mandatory use.)

12. **SETTLEMENT AND OTHER EXPENSES:**

A. The following expenses must be paid at or prior to closing:

(1) Expenses payable by Seller (Seller's Expenses):

(a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.

(b) Seller shall also pay an amount not to exceed $ __________ to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.



Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com Aisha Waldrup

(2) Expenses payable by Buyer (Buyer's Expenses): Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.

B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

**13. PRORATIONS:** Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the Effective Date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds, if permitted by Seller's insurance carrier, and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**17. ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

**18. ESCROW:**

A. ESCROW: The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent.

B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may: (i) require a written release of liability of the escrow agent from all parties, (ii) require payment of unpaid expenses incurred on behalf of a party, and (iii) only deduct from the earnest money the amount of unpaid expenses incurred on behalf of the party receiving the earnest money.

C. DEMAND: Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly

provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.

D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

E. NOTICES: Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

19. **REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

20. **FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by Internal Revenue Code and its regulations, or if Seller fails to deliver an affidavit or a certificate of non-foreign status to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

21. **NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

| **To Buyer** | | **To Seller** | |
|---|---|---|---|
| at: | **17107 Mountain Crest Drive** | at: | **8984 Shelter Cove Road** |
| | **Spring, TX 77379** | | **Whitehorn, CA 95589** |
| Phone: | **(281)901-4306** | Phone: | **(707)223-1072** |
| Fax: | | Fax: | |
| E-mail: | **joy4aisha@gmail.com** | E-mail: | **Bradleyheiser@gmail.com** |

22. **AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (Check all applicable boxes):

- [X] Third Party Financing Addendum
- [ ] Seller Financing Addendum
- [X] Addendum for Property Subject to Mandatory Membership in a Property Owners Association
- [ ] Buyer's Temporary Residential Lease
- [ ] Loan Assumption Addendum
- [ ] Addendum for Sale of Other Property by Buyer
- [ ] Addendum for Reservation of Oil, Gas and Other Minerals
- [ ] Addendum for "Back-Up" Contract
- [ ] Addendum for Coastal Area Property
- [ ] Addendum for Authorizing Hydrostatic Testing
- [ ] Addendum Concerning Right to Terminate Due to Lender's Appraisal
- [ ] Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum
- [ ] Seller's Temporary Residential Lease
- [ ] Short Sale Addendum
- [ ] Addendum for Property Located Seaward of the Gulf Intracoastal Waterway
- [ ] Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law
- [ ] Addendum for Property in a Propane Gas System Service Area
- [X] Other (list): **MIUD Addendum**

23. **TERMINATION OPTION:** For nominal consideration, the receipt of which is hereby acknowledged by Seller, and Buyer's agreement to pay Seller $ ________ (Option Fee) within 3 days after the Effective Date of this contract, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within 0 days after the Effective Date of this contract (Option Period). Notices under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified. If no dollar amount is stated as the Option Fee or if Buyer fails to pay the Option Fee to Seller within the time prescribed, this paragraph will not be a part of this contract and Buyer shall not have the unrestricted right to terminate this contract. If Buyer gives notice of termination within the time prescribed, the Option Fee will not be refunded; however, any earnest money will be refunded to Buyer. The Option Fee ☐ will ☒ will not be credited to the Sales Price at closing. **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

24. **CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate license holders from giving legal advice. READ THIS CONTRACT CAREFULLY.

| Buyer's Attorney is: | | Seller's Attorney is: | |
|---|---|---|---|
| | | | |
| Phone: | | Phone: | |
| Fax: | | Fax: | |
| E-mail: | | E-mail: | |

**EXECUTED the ________ day of July 1, 2020 , ______ (Effective Date).**
**(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)**

DocuSigned by: Aisha Waldrup
1567D92CD4C541F...
Buyer Aisha Waldrup

DocuSigned by: Tiwana Goerner
Seller Tiwana Goerner

Buyer

Seller

TREC — The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 20-14. This form replaces TREC NO. 20-13.

## BROKER INFORMATION

(Print name(s) only. Do not sign)

| | |
|---|---|
| Other Broker Firm / License No. | BHGRE Gary Greene Realty / 475512 — Listing Broker Firm / License No. |
| represents ☐ Buyer only as Buyer's agent ☐ Seller as Listing Broker's subagent | represents ☒ Seller and Buyer as an intermediary ☐ Seller only as Seller's agent |
| Associate's Name / License No. | Tim Merritt / 643252 — Listing Associate's Name / License No. |
| Associate's Email Address / Phone | Tim.Merritt@garygreene.com / (832)474-0770 — Listing Associate's Email Address / Phone |
| Licensed Supervisor of Associate / License No. | Sharon Teusink / 302669 — Licensed Supervisor of Listing Associate / License No. |
| Other Broker's Address / Phone | 8817 Louetta Road / (281)444-5140 — Listing Broker's Office Address / Phone |
| City / State / Zip | Spring / TX / 77379 — City / State / Zip |
| | Selling Associate's Name / License No. |
| | Selling Associate's Email Address / Phone |
| | Licensed Supervisor of Selling Associate / License No. |
| | Selling Associate's Office Address |
| | City / State / Zip |

Listing Broker has agreed to pay Other Broker ____________ of the total sales price when the Listing Broker's fee is received. Escrow agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.



Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com Aisha Waldrup

## OPTION FEE RECEIPT

Receipt of $__________ (Option Fee) in the form of __________ na __________ is acknowledged.

Seller or Listing Broker | Date

## EARNEST MONEY RECEIPT

Receipt of $2,300.00 Earnest Money in the form of __________ is acknowledged.

Escrow Agent | Received by | Email Address | Date/Time

Address | Phone

City | State | Zip | Fax

## CONTRACT RECEIPT

Receipt of the Contract is acknowledged.

Escrow Agent | Received by | Email Address | Date

Address | Phone

City | State | Zip | Fax

## ADDITIONAL EARNEST MONEY RECEIPT

Receipt of $__________ additional Earnest Money in the form of __________ is acknowledged.

Escrow Agent | Received by | Email Address | Date/Time

Address | Phone

City | State | Zip | Fax



Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com Aisha Waldrup

# EXHIBIT SHEET B

Gmail

Aisha Waldrup <joy4aisha@gmail.com>

**LOE for payment**

**Aguilar, Venessa (TATCO)** <VAguilar@texasamerican.com> Tue, Feb 20, 2024 at 2:11 PM
To: Aisha Waldrup <joy4aisha@gmail.com>, Brewer, Megan (TATCO) <Megan.Brewer@texasamerican.com>, Herlache, Dawn (TATCO) <DHerlache@texasamerican.com>

Hi Aisha,

I hope this email finds you doing well!

It looks like the attached notes on the check indicate that it was a refund for your earnest money lender was unable to source.

If you have any further questions, please do not hesitate to reach out.

**Thank you,**

**Venessa Aguilar**

**Venessa Aguilar**

**Regional Manager**
VAguilar@TexasAmerican.com
**C:** 281.687.4466 • **O:** 281.376.9798 •

18425 Champion Forest Drive, Suite 120 | Spring, TX 77379

8817 Louetta Rd, Spring, TX 77379

23922 Cinco Village Center Blvd. Suite 121 Katy, TX 77494

10333 Harwin Dr., Suite 110 Houston, TX 77036

[Quoted text hidden]

**This email originated from outside the organization. Do not click links or open any attachments unless you recognize the source of the email.**

**BEWARE OF CYBER-FRAUD! Before wiring any funds, call the intended recipient at a number you know is valid to confirm the instructions and be wary of any request to change wire instructions you already received.**

**This email may be confidential. If you are not the intended recipient, please notify us immediately and delete this copy from your system.**

**In our ongoing focus on your security, we have changed our encryption provider to Mimecast encryption. This may require you to create a new account.**

image001.jpg

**Texas American Title Company**

ESCROW ACCOUNT
27570-Louetta
8817 Louetta Road
Spring TX 77379
Ph : (281) 655-0168

Texas First Bank
3000 FM 1764 Rd.
La Marque,TX, 77568

570012555

FILE #
2757020-07180

DATE
1/15/2021

88-1025/1131

AMOUNT

PAY Four Thousand Six Hundred and 00 /100 Dollars

$4,600.00

TO THE ORDER OF Aisha Waldrup
17107 Mountain Crest Drive
Spring TX 77379

NOT VALID FOR ACH PROCESSING

PROP ID
MEMO Ref #

VOID AFTER 60 DAYS • TWO SIGNATURES REQUIRED

⑈570012555⑈ ⑆113110256⑆ ⑈ 19151⑈

File #: 2757020-07180 2999920-01103 Closer:Megan Brewer 1/15/2021 570012555
Buyer: Aisha Waldrup
Seller: Tiwana S. Goerner
Prop Addr: 17107 Mountain Crest Drive, Spring, TX 77379

Ref #

Unsourced EMD Funds to Aisha Waldrup 4600.00

Aisha Waldrup
17107 Mountain Crest Drive
Spring TX 77379

8817 Louetta Road
Spring TX 77379

FILE COPY

2757020-07180
1/15/2021
570012555
88-1025/1131

PAY Four Thousand Six Hundred and 00 /100 Dollars

$4,600.00

TO THE ORDER OF Aisha Waldrup
17107 Mountain Crest Drive
Spring TX 77379

MEMO Ref #

⑈570012555⑈ ⑆113110256⑆ ⑈ 19151⑈

File #: 2757020-07180 2999920-01103 Closer: Megan Brewer 1/15/2021 570012555
Buyer: Aisha Waldrup
Seller: Tiwana S. Goerner
Prop Addr: 17107 Mountain Crest Drive, Spring, TX 77379

Ref #

Unsourced EMD Funds to Aisha Waldrup 4600.00

8817 Louetta Road
Spring TX 77379

# Closing Disclosure

*This form is a statement of final loan terms and closing costs. Compare this document with your Loan Estimate.*

**Closing Information**

| | |
|---|---|
| **Date Issued** | 01/14/21 |
| **Closing Date** | 01/15/21 |
| **Disbursement Date** | 01/15/21 |
| **Settlement Agent** | Texas American Title Company |
| **File #** | 2757020-07180 |
| **Property** | 17107 Mountain Crest Drive Spring, TX 77379 |
| **Sale Price** | $230,000 |

**Transaction Information**

| | |
|---|---|
| **Borrower** | Aisha Waldrup 17107 Mountain Crest Drive Spring, TX 77379 |
| **Seller** | Tiwana S Goerner 17107 Mountain Crest Drive Spring, TX 77379 |
| **Lender** | Cardinal Financial Company, Limited Partnership |

**Loan Information**

| | |
|---|---|
| **Loan Term** | 30 years |
| **Purpose** | Purchase |
| **Product** | Fixed Rate |
| **Loan Type** | ☐ Conventional ☒ FHA ☐ VA ☐ ________ |
| **Loan ID #** | 1400702142 |
| **MIC #** | 512-3976176-703 |

## Loan Terms

| Loan Terms | | Can this amount increase after closing? |
|---|---|---|
| **Loan Amount** | $225,834 | NO |
| **Interest Rate** | 3.125% | NO |
| **Monthly Principal & Interest** *See Projected Payments below for your Estimated Total Monthly Payment* | $967.42 | NO |
| | | **Does the loan have these features?** |
| **Prepayment Penalty** | | NO |
| **Balloon Payment** | | NO |

## Projected Payments

| Payment Calculations | | Years 1-30 |
|---|---|---|
| Principal & Interest | | $967.42 |
| Mortgage Insurance | + | $155.75 |
| Estimated Escrow *Amount can increase over time* | + | $594.70 |
| **Estimated Total Monthly Payment** | | **$1,717.87** |

| | | | |
|---|---|---|---|
| **Estimated Taxes, Insurance, & Assessments** *Amount can increase over time* *See page 4 for details* | $649.70 a month | **This estimate includes** | **In escrow?** |
| | | ☒ Property Taxes | YES |
| | | ☒ Homeowner's Insurance | YES |
| | | ☒ Other: Homeowner's Association Dues | NO |
| | | *See Escrow Account on page 4 for details. You must pay for other property costs separately.* | |

## Costs at Closing

| | | |
|---|---|---|
| **Closing Costs** | $14,331.15 | Includes $9,392.42 in Loan Costs + $4,938.73 in Other Costs - $0.00 in Lender Credits. *See page 2 for details.* |
| **Cash To Close** | $11,500.00 | Includes Closing Costs. *See Calculating Cash to Close on page 3 for details.* |



Scanned with CamScanner

# Closing Cost Details

| Loan Costs | Borrower-Paid At Closing | Borrower-Paid Before Closing | Seller-Paid At Closing | Seller-Paid Before Closing | Paid by Others |
|---|---|---|---|---|---|
| **A. Origination Charges** | $2,494.90 | | | | |
| 01 0.392% of Loan Amount (Points) | $885.27 | | | | |
| 02 Application Fee | $395.00 | | | | |
| 03 Lock Extension Fee | $39.63 | | | | |
| 04 Processing Fee | $700.00 | | | | |
| 05 Underwriting Fee | $475.00 | | | | |
| 06 | | | | | |
| 07 | | | | | |
| 08 | | | | | |
| **B. Services Borrower Did Not Shop For** | $4,724.92 | | | | |
| 01 Appraisal Fee to Mercury Network Appraiser | | $525.00 | | | $525.00 |
| 02 Appraisal Fee - Final Inspection to MyAMC | $150.00 | | | | |
| 03 Attorney Document Review to Black, Mann, and Graham | $125.00 | | | | |
| 04 Credit Report Fee to Credit Plus Inc. | $33.80 | | | | |
| 05 FHA Upfront MI Premium to U.S. Department of HUD | $3,884.12 | | | | |
| 06 Flood Certification to CoreLogic Flood Services | $7.00 | | | | |
| 07 | | | | | |
| 08 | | | | | |
| 09 | | | | | |
| **C. Services Borrower Did Shop For** | $2,172.60 | | | | |
| 01 Title - Endorsement 5 to Texas American Title Co. | $25.00 | | | | |
| 02 Title - Endorsement 8.1 to Texas American Title Co. | $25.00 | | | | |
| 03 Title - Endorsement T-19 to Texas American Title Co. | $74.75 | | | | |
| 04 Title - Endorsement T-3 to Texas American Title Co. | $5.00 | | | | |
| 05 Title - Endorsement T-30 to Texas American Title Co. | $20.00 | | | | |
| 06 Title - Escrow Fee to Texas American Title Co. | $450.00 | | | | |
| 07 Title - Guaranty Fee to TTIGA | $2.00 | | | | |
| 08 Title - Lender's Title Insurance to Texas American Title Co. | $1,495.00 | | | | |
| 09 Title - NJ Non Survey Endorsement to Texas American Title Co. | $75.85 | | | | |
| **D. TOTAL LOAN COSTS (Borrower-Paid)** | $9,392.42 | | | | |
| Loan Costs Subtotals (A + B + C) | $8,867.42 | $525.00 | | | |

| Other Costs | Borrower-Paid At Closing | Borrower-Paid Before Closing | Seller-Paid At Closing | Seller-Paid Before Closing | Paid by Others |
|---|---|---|---|---|---|
| **E. Taxes and Other Government Fees** | $154.00 | | | | |
| 01 Recording Fees Deed: $26.00 Mortgage: $128.00 | $154.00 | | | | |
| 02 | | | | | |
| **F. Prepaids** | $2,072.78 | | | | |
| 01 Homeowner's Insurance Premium ( 12 mo.) to Farmers Ins. Agency | $1,744.00 | | | | |
| 02 Mortgage Insurance Premium ( mo.) | | | | | |
| 03 Prepaid Interest ( $19.34 per day from 01/15/21 to 02/01/21 ) | $328.78 | | | | |
| 04 Property Taxes ( mo.) | | | | | |
| 05 | | | | | |
| **G. Initial Escrow Payment at Closing** | $1,783.95 | | | | |
| 01 Homeowner's Insurance $145.34 per month for 3 mo. | $436.02 | | | | |
| 02 Mortgage Insurance per month for mo. | | | | | |
| 03 County Property Tax $149.37 per month for 4 mo. | $597.48 | | | | |
| 04 Other Tax 1 Escrow Deposit $48.83 per month for 4 mo. | $195.32 | | | | |
| 05 School Property Tax $251.16 per month for 4 mo. | $1,004.64 | | | | |
| 06 | | | | | |
| 07 | | | | | |
| 08 Aggregate Adjustment | -$449.51 | | | | |
| **H. Other** | $928.00 | | | | |
| 01 HOA Resale Certificate to Champion Springs Village | $556.00 | | | | |
| 02 HOA Transfer Fee to Chaparral Management | $200.00 | | | | |
| 03 Non-Recurring Agency Fee to Farmers Ins. | $50.00 | | | | |
| 04 Real Estate Commission Listing Agency to Gardens Real Estate Gray Greene | | | $6,900.00 | | |
| 05 Real Estate Commission Selling Agency to Gardens Real Estate Gray Greene | | | $6,900.00 | | |
| 06 Title - Owner's Title Insurance (optional) to Texas American Title Co. | $122.00 | | | | |
| 07 | | | | | |
| 08 | | | | | |
| **I. TOTAL OTHER COSTS (Borrower-Paid)** | $4,938.73 | | | | |
| Other Costs Subtotals (E + F + G + H) | $4,938.73 | | | | |
| **J. TOTAL CLOSING COSTS (Borrower-Paid)** | $14,331.15 | | | | |
| Closing Costs Subtotals (D + I) | $13,806.15 | $525.00 | $13,800.00 | | $525.00 |



Scanned with CamScanner

Lender Credits



Scanned with CamScanner

## Calculating Cash to Close

Use this table to see what has changed from your Loan Estimate

| | Loan Estimate | Final | Did this change? |
|---|---|---|---|
| Total Closing Costs (J) | $15,606 | $14,331.15 | YES • See Total Loan Costs (D) and Total Other Costs (I) |
| Closing Costs Paid Before Closing | $0 | -$525.00 | YES • You paid these costs before closing. |
| Closing Costs Financed (Paid from your Loan Amount) | -$3,884 | -$3,884.00 | NO |
| Down Payment/Funds from Borrower | $8,050 | $8,050.00 | NO |
| Deposit | -$2,300 | $0 | YES • You decreased this payment. See details in Section L |
| Funds for Borrower | $0 | $0 | NO |
| Seller Credits | $0 | -$6,900.00 | YES • See Seller Credits in Section L |
| Adjustments and Other Credits | -$2,825 | $427.85 | YES • See details in Sections K and L |
| **Cash to Close** | $14,647 | $11,500.00 | |

## Summaries of Transactions

Use this table to see a summary of your transactions.

### BORROWER'S TRANSACTIONS

| | | |
|---|---|---|
| **K. Due from Borrower at Closing** | | **$244,440.83** |
| 01 Sale Price of Property | | $230,000.00 |
| 02 Sale Price of Any Personal Property Included in Sale | | |
| 03 Closing Costs Paid at Closing (J) | | $13,806.15 |
| 04 | | |
| **Adjustments** | | |
| 05 | | |
| 06 | | |
| 07 | | |
| **Adjustments for Items Paid by Seller in Advance** | | |
| 08 City/Town Taxes | to | |
| 09 County Taxes | to | |
| 10 Assessments | to | |
| 11 HOA Dues | 1/15/21 to 1/1/22 | $634.68 |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| **L. Paid Already by or on Behalf of Borrower at Closing** | | **$232,940.83** |
| 01 Deposit | | |
| 02 Loan Amount | | $225,834.00 |
| 03 Existing Loan(s) Assumed or Taken Subject to | | |
| 04 | | |
| 05 Seller Credit | | $6,900.00 |
| **Other Credits** | | |
| 06 | | |
| 07 | | |
| **Adjustments** | | |
| 08 | | |
| 09 | | |
| 10 | | |
| 11 | | |
| **Adjustments for Items Unpaid by Seller** | | |
| 12 City/Town Taxes | to | |
| 13 County Taxes | 1/1/21 to 1/15/21 | $206.83 |
| 14 Assessments | to | |
| 15 | | |
| 16 | | |
| 17 | | |
| **CALCULATION** | | |
| Total Due from Borrower at Closing (K) | | $244,440.83 |
| Total Paid Already by or on Behalf of Borrower at Closing (L) | | -$232,940.83 |
| **Cash to Close ☒ From ☐ To Borrower** | | **$11,500.00** |

### SELLER'S TRANSACTIONS

| | | |
|---|---|---|
| **M. Due to Seller at Closing** | | **$230,634.68** |
| 01 Sale Price of Property | | $230,000.00 |
| 02 Sale Price of Any Personal Property Included in Sale | | |
| 03 | | |
| 04 | | |
| 05 | | |
| 06 | | |
| 07 | | |
| 08 | | |
| **Adjustments for Items Paid by Seller in Advance** | | |
| 09 City/Town Taxes | to | |
| 10 County Taxes | to | |
| 11 Assessments | to | |
| 12 HOA Dues | 1/15/21 to 1/1/22 | $634.68 |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| **N. Due from Seller at Closing** | | **$20,906.83** |
| 01 Excess Deposit | | |
| 02 Closing Costs Paid at Closing (J) | | $13,800.00 |
| 03 Existing Loan(s) Assumed or Taken Subject to | | |
| 04 Payoff of First Mortgage Loan | | |
| 05 Payoff of Second Mortgage Loan | | |
| 06 | | |
| 07 | | |
| 08 | | |
| 09 Seller Credit | | $6,900.00 |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| **Adjustments for Items Unpaid by Seller** | | |
| 14 City/Town Taxes | to | |
| 15 County Taxes | 1/1/21 to 1/15/21 | $206.83 |
| 16 Assessments | to | |
| 17 | | |
| 18 | | |
| 19 | | |
| **CALCULATION** | | |
| Total Due to Seller at Closing (M) | | $230,634.68 |
| Total Due from Seller at Closing (N) | | -$20,906.83 |
| **Cash ☐ From ☒ To Seller** | | **$209,727.85** |



Scanned with CamScanner

# Additional Information About This Loan

## Loan Disclosures

### Assumption

If you sell or transfer this property to another person, your lender

☒ will allow, under certain conditions, this person to assume this loan on the original terms

☐ will not allow assumption of this loan on the original terms

### Demand Feature

Your loan

☐ has a demand feature, which permits your lender to require early repayment of the loan. You should review your note for details.

☒ does not have a demand feature.

### Late Payment

If your payment is more than 15 days late, your lender will charge a late fee of 4% of the overdue payment of principal and interest.

### Negative Amortization (Increase in Loan Amount)

Under your loan terms, you

☐ are scheduled to make monthly payments that do not pay all of the interest due that month. As a result, your loan amount will increase (negatively amortize), and your loan amount will likely become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.

☐ may have monthly payments that do not pay all of the interest due that month. If you do, your loan amount will increase (negatively amortize), and, as a result, your loan amount may become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.

☒ do not have a negative amortization feature.

### Partial Payments

Your lender

☐ may accept payments that are less than the full amount due (partial payments) and apply them to your loan.

☐ may hold them in a separate account until you pay the rest of the payment, and then apply the full payment to your loan.

☒ does not accept any partial payments.

If this loan is sold, your new lender may have a different policy.

### Security Interest

You are granting a security interest in

*17107 Mountain Crest Drive, Spring, TX 77379*

You may lose this property if you do not make your payments or satisfy other obligations for this loan.

### Escrow Account

***For now,*** your loan

☒ will have an escrow account (also called an "impound" or "trust" account) to pay the property costs listed below. Without an escrow account, you would pay them directly, possibly in one or two large payments a year. Your lender may be liable for penalties and interest for failing to make a payment.

| Escrow | | |
|---|---|---|
| Escrowed Property Costs over Year 1 | $9,005.40 | Estimated total amount over year 1 for your escrowed property costs: *Hazard Insurance, Utility District, County Property Tax, School Property Tax, Mortgage Insurance* |
| Non-Escrowed Property Costs over Year 1 | $660.00 | Estimated total amount over year 1 for your non-escrowed property costs: *Homeowner's Association Dues*<br><br>You may have other property costs |
| Initial Escrow Payment | $1,783.95 | A cushion for the escrow account you pay at closing. See Section G on page 2. |
| Monthly Escrow Payment | $750.45 | The amount included in your total monthly payment. |

☐ will not have an escrow account because ☐ you declined it ☐ your lender does not offer one. You must directly pay your property costs, such as taxes and homeowner's insurance. Contact your lender to ask if your loan can have an escrow account.

| No Escrow | | |
|---|---|---|
| Estimated Property Costs over Year 1 | | Estimated total amount over year 1. You must pay these costs directly, possibly in one or two large payments a year |
| Escrow Waiver Fee | | |

***In the future,***

Your property costs may change and, as a result, your escrow payment may change. You may be able to cancel your escrow account, but if you do, you must pay your property costs directly. If you fail to pay your property taxes, your state or local government may (1) impose fines and penalties or (2) place a tax lien on this property. If you fail to pay any of your property costs, your lender may (1) add the amounts to your loan balance, (2) add an escrow account to your loan, or (3) require you to pay for property insurance that the lender buys on your behalf, which likely would cost more and provide fewer benefits than what you could buy on your own.



Scanned with CamScanner

## Loan Calculations

| | |
|---|---|
| **Total of Payments.** Total you will have paid after you make all payments of principal, interest, mortgage insurance, and loan costs, as scheduled. | $390,720.60 |
| **Finance Charge.** The dollar amount the loan will cost you. | $162,457.20 |
| **Amount Financed.** The loan amount available after paying your upfront finance charge. | $218,542.20 |
| **Annual Percentage Rate (APR).** Your costs over the loan term expressed as a rate. This is not your interest rate. | 4.241% |
| **Total Interest Percentage (TIP).** The total amount of interest that you will pay over the loan term as a percentage of your loan amount. | 54.36% |

**Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at **www.consumerfinance.gov/mortgage-closing**

## Other Disclosures

**Appraisal**
If the property was appraised for your loan, your lender is required to give you a copy at no additional cost at least 3 days before closing. If you have not yet received it, please contact your lender at the information listed below.

**Contract Details**
See your note and security instrument for information about
- what happens if you fail to make your payments,
- what is a default on the loan,
- situations in which your lender can require early repayment of the loan, and
- the rules for making payments before they are due.

**Liability after Foreclosure**
If your lender forecloses on this property and the foreclosure does not cover the amount of unpaid balance on this loan,
☒ state law may protect you from liability for the unpaid balance. If you refinance or take on any additional debt on this property, you may lose this protection and have to pay any debt remaining even after foreclosure. You may want to consult a lawyer for more information.
☐ state law does not protect you from liability for the unpaid balance.

**Refinance**
Refinancing this loan will depend on your future financial situation, the property value, and market conditions. You may not be able to refinance this loan.

**Tax Deductions**
If you borrow more than this property is worth, the interest on the loan amount above this property's fair market value is not deductible from your federal income taxes. You should consult a tax advisor for more information.

## Contact Information

| | Lender | Mortgage Broker | Real Estate Broker (B) | Real Estate Broker (S) | Settlement Agent |
|---|---|---|---|---|---|
| Name | Cardinal Financial Company, Limited Partnership | | | BHGRE Gary Greene Realty | Texas American Title Company |
| Address | 3701 Arco Corporate Drive, Suite 200 Charlotte, NC 28273 | | | 8817 Louetta Road Spring, TX 77379 | 8817 Louetta Road Spring, TX 77379 |
| NMLS ID | 66247 | | | | |
| TX License ID | 66247 | | | 475512 | 92349 |
| Contact | Aubrey Miller | | | Tim Merrit | Tina Murillo |
| Contact NMLS ID | 1039583 | | | | |
| Contact TX License ID | 1039583 | | | 643252 | 1306609 |
| Email | aubrey.miller@cardinalfinancial.com | | | tim.merritt@garygreene.com | tmurillo@texasamerican.com |
| Phone | (817) 793-8288 | | | (832) 474-0770 | (281) 655-0168 |



Scanned with CamScanner

## Acknowledgement of Receipt of Closing Disclosure

**Confirm Receipt**

By signing, you are only confirming that you have received this form. You do not have to accept this loan because you have signed or received this form.

Aisha Waldrup

01.15.21
Date



Scanned with CamScanner

# EXHIBIT SHEET C

# NOTICE OF PENALTIES FOR MAKING A FALSE OR MISLEADING WRITTEN STATEMENT

**Date** 01/15/2021
**Borrower** Aisha Waldrup

**Loan No.** 1400702142 | Case No. 512-3976176-703
**Property** 17107 Mountain Crest Drive
Spring, TX 77379
Harris County

**Lender** Cardinal Financial Company, Limited Partnership
NMLS ID: 66247 State License: 66247
**Originator** Aubrey Miller, NMLS ID: 1039583 State MLO ID: 1039583

*This disclosure is provided to you in compliance with Texas Financial Code Ann. § 343.105.*

**Warning: Intentionally or knowingly making a materially false or misleading written statement to obtain property or credit, including a mortgage loan, is a violation of Section 32.32, Texas Penal Code, and, depending on the amount of the loan or value of the property, is punishable by imprisonment for a term of 2 years to 99 years and a fine not to exceed $10,000.**

I/We, the undersigned home loan applicant(s), represent that I/we have received, read, and understand this notice of penalties for making a materially false or misleading written statement to obtain a home loan.

I/We represent that all statements and representations contained in my/our written home loan application, including statements or representations regarding my/our identity, employment, annual income, and intent to occupy the residential real property secured by the home loan, are true and correct as of the date of loan closing.

**Acknowledgement**
By signing below, you hereby acknowledge reading and understanding all of the information disclosed above, and receiving a copy of this disclosure on the date indicated below.

[signature] 01·15·21
Aisha Waldrup, Borrower Date

Date

Date

Date

Date

Date

Date

Date

Date

Date

# NOTICE OF PENALTIES FOR MAKING A FALSE OR MISLEADING WRITTEN STATEMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of: Texas )
) SS
County of: Harris )

Subscribed and sworn to (or affirmed) before me on this 15 day of Jan. 2021, byAisha Waldrup , proved to me on this basis of satisfactory evidence to be the persons(s) who appeared before me.

MEGAN BREWER
Notary Public, State of Texas
Comm. Expires 10-02-2022
Notary ID 13174564-6

(Seal)

Notary Public Signature

My Commission Expires: 10-02-2022

# EXHIBIT SHEET D

Gmail **Aisha Waldrup <joy4aisha@gmail.com>**

## Proof of Notice of Rescission to Freedom 10/19/23_Fwd: Freedom Secure- LN# 151096534

1 message

**Aisha Waldrup** <joy4aisha@gmail.com> Wed, Dec 11, 2024 at 2:03 AM
To: Aisha Waldrup <joy4aisha@gmail.com>, noticetorescind@gmail.com

---------- Forwarded message ---------
From: **Aisha Waldrup** <joy4aisha@gmail.com>
Date: Wed, Jan 3, 2024 at 11:06 PM
Subject: Re: Freedom Secure- LN# 151096534
To: Jon Blanco <Jon.Blanco@freedommortgage.com>

Evening Jon, I wanted you to be the first that is aware because you were so kind to me. If you look at the document your office sent me look at the bottom the fifth line up from the bottom is clear evidence of fraud and federal misappropriation of funds.

It clearly shows that the dollar amount of $6720.71 was sent to Cardinal Financial 6/22, that Cardinal did not credited to the mortgage account. Instead they put the $6720.71 and a suspense account, you can see it right here on their documentation.

And since it is so evident on their documentation it is clear that freedom mortgage is in cahoots with cardinal mortgage, as freedom mortgage states that they acquired this debt in July.

Therefore Freedom Mortgage had more than enough time to preform their due diligence to protect the federal funds that has been misappropriated as well as the consumer from abuse, deceit, and misrepresentation in addition to fraud and misappropriation of federal funds. to what they had purchased.

I affirm that it is not an error, but instead and intentional omission of the misappropriation of funds as well as fraud, deception, abuse and countless other acts against myself and federal funds, this is organized crime.

Therefore the transfer, the sale, exchange or whatever have Freedom Mortgage have between Cardinal Financial is fictitious sale trade or exchange because Cardinal mortgage committed fraud and misappropriated government funds, to say the least. I also see that my note says that Cardinal Financial gave me over $225,000 that I did not receive.

But not even focusing on that fraud simply focusing on the fact that your company is telling me they are going to liquidate my Homestead because I owe them money and Cardinal Financial sold a Fictitious debt to your company while owing me money so how do I owe your company any money??

Once again this is fraud, if you reported me late to the credit bureau is defamation of character slander if you're saying I have not paid this fictitious debt, in addition to deception and coercion.

All which I will be reporting to every federal authority that I can report this to!

P3101-496-4 CUSTOMER ACCOUNT ACTIVITY STATEMENT DATE 09/01/23
LSS ID V35FMC0901 PAGE 4

AISHA WALDRUP
LOAN NUMBER: 1474489422

ACTIVITY FOR PERIOD - - - 09-01-23

| PROCESS DATE / DUE DATE / TRANSACTION CODE / TRANSACTION DESCRIPTION | | | | | | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|---|---|
| TRANSACTION AMOUNT | PRIN PD/ BALANCE | INTEREST | ESCROW PD/ BALANCE | OTHER AMOUNT | OTHER CODE/DESCRIPTION | |
| 11-02-22 02-23 310 MIP/PMI MORTGAGE INSURANCE | | | | | | |
| 152.49- | 0.00 | 0.00 | 152.49- | | | |
| | 218,057.11 | | 7,216.28 | | NEW PRINCIPAL/ESCROW BALANCES | |
| 10-13-22 10-22 173 PAYMENT | | | | | | |
| 1,798.06 | 398.53 | 568.89 | 830.64 | | | |
| | 218,057.11 | | 7,368.77 | | NEW PRINCIPAL/ESCROW BALANCES | |
| 10-04-22 02-23 310 MIP/PMI MORTGAGE INSURANCE | | | | | | |
| 152.49- | 0.00 | 0.00 | 152.49- | | | |
| | 218,455.64 | | 6,538.13 | | NEW PRINCIPAL/ESCROW BALANCES | |
| 09-02-22 02-23 310 MIP/PMI MORTGAGE INSURANCE | | | | | | |
| 152.49- | 0.00 | 0.00 | 152.49- | | | |
| | 218,455.64 | | 6,690.62 | | NEW PRINCIPAL/ESCROW BALANCES | |
| 08-10-22 09-22 173 PAYMENT | | | | | | 08-05-22 |
| 0.00 | 397.49 | 569.93 | 926.58 | | | |
| | 218,455.64 | | 6,843.11 | | NEW PRINCIPAL/ESCROW BALANCES | |
| 08-10-22 08-22 173 PAYMENT | | | | | | 08-05-22 |
| 0.00 | 396.46 | 570.96 | 926.58 | | | |
| | 218,853.13 | | 5,916.53 | | NEW PRINCIPAL/ESCROW BALANCES | |
| 08-10-22 07-22 173 PAYMENT | | | | | | 08-05-22 |
| 0.00 | 395.43 | 571.99 | 3,280.31 | 8,035.73- | SUSPENSE | |
| | | | | 0.00 | SUSP-BAL | |
| | 219,249.59 | | 4,989.95 | | NEW PRINCIPAL/ESCROW BALANCES | |
| 08-10-22 06-22 173 PAYMENT | | | | | | 07-10-22 |
| 0.00 | 394.40 | 573.02 | 1,006.00 | 1,973.42- | SUSPENSE | |
| | | | | 8,035.73 | SUSP-BAL | |
| | 219,645.02 | | 1,709.64 | | NEW PRINCIPAL/ESCROW BALANCES | |
| 08-09-22 06-22 173 PAYMENT | | | | | | 08-05-22 |
| 6,720.71 | 0.00 | 0.00 | 0.00 | 6,720.71 | SUSPENSE | |
| | | | | 10,009.15 | SUSP-BAL | |
| 08-03-22 03-23 351 HAZARD INSURANCE DISBURSEMENT (PRIMARY POLICY) | | | | | | |
| 225.00- | 0.00 | 0.00 | 225.00- | | | |
| | 220,039.42 | | 703.64 | | NEW PRINCIPAL/ESCROW BALANCES | |
| 08-02-22 02-23 310 MIP/PMI MORTGAGE INSURANCE | | | | | | |
| 152.49- | 0.00 | 0.00 | 152.49- | | | |
| | 220,039.42 | | 928.64 | | NEW PRINCIPAL/ESCROW BALANCES | |
| 07-15-22 06-22 173 PAYMENT | | | | | | 07-10-22 |
| 1,808.82 | 0.00 | 0.00 | 0.00 | 1,808.82 | SUSPENSE | |
| | | | | 3,288.44 | SUSP-BAL | |
| 07-05-22 02-23 310 MIP/PMI MORTGAGE INSURANCE | | | | | | |
| 152.49- | 0.00 | 0.00 | 152.49- | | | |
| | 220,039.42 | | 1,081.13 | | NEW PRINCIPAL/ESCROW BALANCES | |

MORTGAGE SERVICES
1 CORPORATE DRIVE
LAKE ZURICH IL 60047

On Thu, Oct 19, 2023 at 11:23 AM Aisha Waldrup <joy4aisha@gmail.com> wrote:

> As of date I dispute any debit owed to freedom mortgage as the documents prove no monies were giving to Aisha Waldrup from Freedom Mortgage
>
> On Thu, Oct 19, 2023 at 11:08 AM Jon Blanco <Jon.Blanco@freedommortgage.com> wrote:

**From:** Servicing CustomerExperience
**Sent:** Thursday, October 19, 2023 11:43 AM
**To:** 'joy4aisha@gmail.com' <joy4aisha@gmail.com>
**Subject:** Freedom Secure- LN# 151096534

Good morning Ms. Waldrup,

Attached is correspondence advising of the transfer from Cardinal Mortgage to Freedom Mortgage. In addition, the October 2023 statement is attached as well.

Sincerely,

FMC

CONFIDENTIALITY NOTICE: This e-mail and any attachments (collectively, "e-mail") is confidential and may contain information that is private, proprietary, and/or legally privileged. Any unauthorized use, copying, printing, saving, sharing or other distribution of this e-mail is strictly prohibited. If you have received this e-mail in error, please (1) notify us so that we can correct the error and take steps to ensure it does not reoccur and (2) delete the e-mail without distribution.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT, HOUSTON TEXAS DIVISION**

**RELATOR:**

WALDRUP ESTATE,

C/O: AISHA WALDRUP & HOUSEHOLD

CIVIL ACTION NO. _4:24-cv-03275

"Judge Alfred Bennet"
"Judges Copy"

**VS.**

**RESPONDANTS:**

CARDINAL FINANCIAL COMPANY,

FREEDOM MORTGAGE CORPORATION,

MORTGAGE ELECTRONIC REGISTRATION (MERS),

DOVENMUEHLE MORTGAGE

## DECLARATION AND DECREE

**COMES NOW** the Plaintiff, **Waldrup Estate, C/O Aisha Waldrup and Household,** pursuant to Texas Civil Practice and Remedies Code § 132.001, and submits this Declaration and Decree in lieu of a sworn affidavit.

---

**DECLARATION**

1. **Legal Status of Mortgage Contract**

- I, **Aisha Waldrup**, declare that the purported mortgage contract entered into with **Cardinal Financial Company** on or about January 15, 2021, is **void ab initio.** Said contract fails to meet the legal requirements for validity under Texas Property Code and federal statutes, as no certified funds were advanced to me, and material misrepresentations induced my agreement.

2. **Lawful Rescission and Lien Nullification**
   - I declare that I lawfully exercised my right to rescind the mortgage contract on October 19, 2023, under **15 U.S.C. § 1635 (Truth in Lending Act).**
   - The mortgage lien was nullified and recorded as such by court order in accordance with **Texas Property Code § 51.903**, with certification provided by the Harris County Deputy Clerk of Court.

3. **Responders' Ongoing Violations**
   - Despite the lawful rescission and nullification of the lien, Responders—**Cardinal Financial Company, Freedom Mortgage Corporation, Mortgage Electronic Registration Systems (MERS)**, and **Dovenmuehle Mortgage**—have continued their unlawful attempts to enforce the void mortgage contract.

4. **Request for Judicial Enforcement**
   - This declaration seeks judicial recognition and enforcement of the rescission and nullification, protection from further harassment, and restitution for damages caused by Responders' unlawful conduct.

---

**DECREE**

**Based on the foregoing, I respectfully request the Court to issue a Decree as follows:**

1. **Declaration of Invalidity**
    - Declare the mortgage agreement between Plaintiff and **Cardinal Financial Company** to be invalid, **void ab initio**, and unenforceable.
2. **Enforcement of Rescission and Lien Nullification**
    - Confirm and enforce the rescission of the mortgage contract as lawfully executed under **15 U.S.C. § 1635**.
    - Enforce the nullification of the mortgage lien as recorded by the Harris County Deputy Clerk of Court.
3. **Permanent Injunction**
    - Issue a permanent injunction restraining Responders, their agents, and successors from:
        - Enforcing or attempting to enforce the rescinded mortgage contract.
        - Reporting inaccurate information regarding the rescinded mortgage to credit reporting agencies.
        - Initiating foreclosure or related actions against Plaintiff for the property in question.
4. **Restitution and Damages**
    - Award treble damages in the amount of **$677,502.00** pursuant to **16 CFR § 433.2** and **18 U.S.C. § 1964(c)**.

- Provide restitution for all payments, fees, and penalties caused by Responders' unlawful actions.
- Impose statutory penalties for violations of TILA, RESPA, and FCRA.

5. **Costs and Attorney's Fees**
   - Award Plaintiff costs of this action, including reasonable attorney's fees.
6. **Further Relief**
   - Grant any other relief deemed just and equitable under the circumstances.

---

**UNSWORN DECLARATION**

**Pursuant to Texas Civil Practice and Remedies Code § 132.001:**

**My name is Aisha Waldrup**, my date of birth 12/25/1976, and my address is **7717 LOUETTA ROAD, #11204, KLEIN, TEXAS 77391**

I declare under penalty of perjury that the foregoing is true and correct.

Executed in **Harris County, State of Texas,** on the **13 day of January, 2025.**

---

**Declarant** [signature]

**Aisha Waldrup**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

**CIVIL ACTION NO. 4:24-cv-03275**

WALDRUP ESTATE,

**"JUDGE ALFRED BENNET"**

**"JUDGES COPY"**

C/O: AISHA WALDRUP AND HOUSEHOLD,

Plaintiff,

v.

CARDINAL FINANCIAL COMPANY,

FREEDOM MORTGAGE CORPORATION,

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (MERS),

DOVENMUEHLE MORTGAGE,

Responders.

---

## PROPOSED ORDER FOR RELATOR'S AMENDED COMPLAINT: MOTION FOR BREACH OF CONTRACT AND CIVIL RICO

Upon consideration of **Plaintiff's Amended Complaint and Motion for Breach of Contract and Violations of Civil RICO**, and having reviewed the evidence, arguments, and applicable law, the Court finds and orders as follows:

1. **Declaration of Rescission and Lien Nullification**

   The Court affirms that the mortgage contract between Plaintiff **Waldrup Estate, C/O Aisha Waldrup and Household** and Responder **Cardinal Financial Company** is invalid, void ab initio, and unenforceable due to Responders' failure to disburse certified

funds and material misrepresentations in the formation of the contract.

The Court further confirms that Plaintiff lawfully rescinded the mortgage under **15 U.S.C. § 1635 (Truth in Lending Act)** and that the lien was nullified by court order in accordance with **Texas Property Code § 51.903**, as recorded by the Harris County Deputy Clerk of Court.

2. **Breach of Contract**

The Court finds that Responders **Cardinal Financial Company, Freedom Mortgage Corporation, Mortgage Electronic Registration Systems (MERS)**, and **Dovenmuehle Mortgage** breached the terms of the mortgage agreement and engaged in fraudulent misrepresentation by failing to disburse certified funds, mishandling payments, and misrepresenting material terms of the loan.

3. **Violations of Federal and State Law**

Responders violated multiple federal and state laws, including:

- **16 CFR § 433.2** – Prohibiting unfair and deceptive practices in financing.
- **Truth in Lending Act (15 U.S.C. § 1635)** – Failing to honor Plaintiff's lawful rescission.
- **Fair Credit Reporting Act (15 U.S.C. § 1681s-2)** – Furnishing false credit information.
- **Real Estate Settlement Procedures Act (12 U.S.C. § 2605)** – Mishandling loan payments and servicing errors.
- **Texas Business and Commerce Code § 27.01** – Fraudulent misrepresentation in real estate transactions.

4. **Civil RICO Violations (18 U.S.C. § 1962(c))**

The Court finds that Responders engaged in a pattern of racketeering activity, including mail fraud, wire fraud, and extortion, as defined under the **Racketeer Influenced and Corrupt Organizations Act.**

5. **Damages Awarded**

   - **Treble Damages**: Responders are ordered to pay Plaintiff treble damages in the amount of **$677,502.00**, pursuant to **16 CFR § 433.2** and **18 U.S.C. § 1964(c).**
   - **Restitution**: Responders are ordered to pay Plaintiff restitution for all payments, fees, and penalties incurred as a result of Responders' unlawful conduct.
   - **Statutory Penalties**: Responders are liable for penalties under TILA, RESPA, and FCRA.
   - **Compensatory and Punitive Damages**: Responders are further ordered to pay compensatory damages for Plaintiff's financial, emotional, and reputational harm, as well as punitive damages to deter future misconduct.

6. **Permanent Injunction**

Responders, their agents, successors, and affiliates are permanently enjoined from:

   - Enforcing or attempting to enforce the rescinded and nullified mortgage contract.
   - Reporting inaccurate information related to the rescinded mortgage to any credit reporting agency.
   - Initiating ANY or other legal proceedings against Plaintiff for a property she does not own.

7. **Costs and Attorney's Fees**

   Responders shall reimburse Plaintiff for all reasonable costs and attorney's fees incurred in bringing this action.

8. **Declaratory Relief**

   The Court declares that Plaintiff's rescission of the mortgage contract is lawful, binding, and effective, and that all liens associated with the mortgage are null and void.

9. **Further Relief**

   The Court grants such other relief as it deems just and equitable under the circumstances.

---

**IT IS SO ORDERED.**

Signed this ____ day of ________**, 202**.

---

**United States District Judge**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT, HOUSTON TEXAS DIVISION**

**RELATOR:**

CIVIL ACTION NO. _4:24-cv-03275

WALDRUP ESTATE,

"Judge Alfred Bennet"
"Judges Copy"

C/O: AISHA WALDRUP & HOUSEHOLD

**VS.**

**RESPONDANTS:**

CARDINAL FINANCIAL COMPANY,

FREEDOM MORTGAGE CORPORATION,

MORTGAGE ELECTRONIC REGISTRATION (MERS),

DOVENMUEHLE MORTGAGE

## JOINDER OF NEW PARTIES

**Pursuant to Federal Rules of Civil Procedure Rules 19 and 20, the following parties are joined to this action:**

**1. Dovenmuehle Mortgage, Inc.**

**Basis for Joinder:**

- Dovenmuehle Mortgage is directly involved in the servicing of the subject mortgage loan and participated in the alleged misconduct, including mishandling of payments, placing

funds into a suspense account without proper allocation, and reporting Plaintiff as delinquent despite approved forbearance arrangements.

- Dovenmuehle's actions contributed to violations of **16 CFR § 433.2**, **TILA (15 U.S.C. § 1635)**, **RESPA (12 U.S.C. § 2605)**, and the **Fair Credit Reporting Act (15 U.S.C. § 1681s-2)**.
- Joinder is appropriate under Rule 19(a)(1)(A) because complete relief cannot be accorded among existing parties without the inclusion of Dovenmuehle, which had a substantial role in the alleged harm to Plaintiff.

**2. Kathryn Buza Davis, through McGlinchey Law Firm**

**Basis for Joinder:**

- Kathryn Buza Davis, an attorney with McGlinchey Law Firm, actively represented **Freedom Mortgage Corporation** and other parties in attempting to enforce the void mortgage contract.
- Davis's actions included filing court documents and engaging in communications perpetuating the fraudulent and rescinded loan, contributing to alleged violations of **RICO (18 U.S.C. § 1962(c))**, **TILA (15 U.S.C. § 1635)**, and **Texas Business and Commerce Code § 27.01**.
- Joinder under Rule 20(a)(2) is appropriate because:
  - The claims against Davis arise out of the same transaction or occurrence as the claims against other Defendants.
  - There are common questions of law and fact regarding the enforceability of the mortgage contract, the alleged fraud, and violations of consumer protection laws.

**3. McGlinchey Law Firm**

**Basis for Joinder:**

- McGlinchey Law Firm, as the entity employing Kathryn Buza Davis, bears responsibility for actions taken in the course of its representation of Freedom Mortgage Corporation and other Defendants in this matter.
- The firm participated in perpetuating fraudulent misrepresentation, aiding and abetting unlawful actions, and engaging in deceptive legal filings.
- Joinder is necessary under Rule 19(a)(1)(B)(i) to protect the interests of all parties involved and ensure the adjudication of all claims arising from the same nucleus of operative facts.

---

## LEGAL STANDARD

1. **Rule 19 (Required Joinder of Parties):**
   - A party must be joined if:
     - (A) Complete relief cannot be accorded among existing parties without the absent party; or
     - (B) The party claims an interest relating to the subject matter of the action and is so situated that disposing of the action without the party may:
       - (i) Impair or impede the party's ability to protect the interest; or
       - (ii) Leave an existing party subject to a substantial risk of inconsistent obligations.

2. **Rule 20 (Permissive Joinder of Parties):**
   - Persons may be joined as defendants if:
     - (A) Any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
     - (B) Any question of law or fact common to all defendants will arise in the action.

---

## CONCLUSION

The joinder of **Dovenmuehle Mortgage, Inc.**, **Kathryn Buza Davis**, and **McGlinchey Law Firm** is warranted under the Federal Rules of Civil Procedure to ensure complete relief, avoid inconsistent obligations, and address common questions of law and fact. These parties are necessary for the adjudication of the claims asserted in Plaintiff's Amended Complaint.

## CERTIFICATE OF SERVICE

**RE: AISHA WALDRUP AND HOUSEHOLD v. Freedom Mortgage, ET AL 4:24-cv-03275**

I hereby certify that on 01/13/25, I served a true and correct copy of the:

Plaintiff Amended Complaint

Decree

Order

Tracking 9590 9402 8732 3310 0263 91

upon the following party: Service was completed via: **U.S. Mail, Pacer, Email.**

- **KATHRYN BUZA DAVIS**
  1001 MCKINNEY STREET, 1500
- HOUSTON, TEXAS 77002
- kdavis@mcglinchey.com

/s./Waldrup: Aisha, Authorize Rep 1-308

WALDRUP ESTATE,
**7717 LOUETTA ROAD, 11204**
**KLIEN, TEXAS REPUBLIC [77391]**

**SUBJECT PROPERTY IS NOT OWNED BY PLAINTIFFS. DO NOT MAIL TO: 17107 MOUNTAIN CREST DRIVE, SPRING TEXAS. PLAINTIFF MAILING: 7717 LOUETTA ROAD, # 11204, KLEIN TEXAS, CERTIFIED ABOVE.**

## CERTIFICATE OF SERVICE

ATW International Trust
7717 Louetta Rd, #11204
Klein TX 77391

**CERTIFIED MAIL**

9589 0710 5270 2020 6986 53

**Retail**

U.S. POSTAGE
FCM LG ENV
SPRING, TX 77
JAN 13, 2025

77002

**$13.56**

RDC 99

S2324E503387

United States District Cou
For The Southern District
ATTN: Clerk of the Court
515 Rusk Street
Houston TX 77002